```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


                                   )
In re:                             )
                                   )
NICKELS MIDWAY PIER, LLC           )
                                   )   HONORABLE JOSEPH E. IRENAS
              Debtor.              )        CIVIL ACTION
                                   )      NO. 06-5230 (JEI)
                                   )   BANKRUPTCY NO. 03-49462(GMB)
NICKELS MIDWAY PIER, LLC           )
                                   )           OPINION
Appellant / Cross-appellee,        )
                                   )
      v.                           )
                                   )
WILD WAVES, LLC                    )
                                   )
Appellee / Cross-appellant.        )
                                   )
```

**Appearances:**

TEICH GROH
By: Brian W. Hofmeister, Esq.
Michael A. Zindler, Esq.
691 State Highway 33
Trenton, New Jersey 08619
      Counsel for Nickels Midway Pier, LLC

SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY
By: Fredric R. Cohen, Esq.
Fairway Corporate Center
4300 Haddonfield Road
Pennsauken, New Jersey 08109
      Counsel for Nickels Midway Pier, LLC

COZEN O'CONNOR
By: Arthur J. Abramowitz, Esq.
Jerrold N. Poslusny, Jr., Esq.
Liberty View, Suite 300
457 Haddonfield Road
Cherry Hill, New Jersey 08002
      Counsel for Wild Waves, LLC

1

**IRENAS**, Senior District Judge:

This matter comes before the Court on the appeal of Debtor Nickels Midway Pier, LLC ("Nickels") and cross-appeal of Wild Waves, LLC ("Wild Waves"), from the Bankruptcy Court's order of September 28, 2006. For the reasons that follow, the Court will affirm in part, and vacate and remand in part, the Bankruptcy Court's order.

**I.**

The background facts of this case have been recited in a previous opinion of this Court, see *Nickels Midway Pier, LLC v. Wild Waves, LLC,* 341 B.R. 486 (D.N.J. 2006), and various opinions of the Bankruptcy Court. The following facts are relevant to the present appeals.

In the previous appeal, *Nickels*, 341 B.R. at 495-96, this Court held that Nickels, the owner and lessor of the Pier at issue, had entered into two independent, but related, agreements with Wild Waves, which leased 70% of the Pier. The first agreement was a written and fully executed Lease for a term of approximately sixteen years, terminating on December 31, 2014. The second agreement was an Oral Contract for Sale, whereby Nickels promised to sell the Pier to Wild Waves for $5.5 million in 2003.

This Court further explained that the Bankruptcy Court below

had conflated the Lease and the Oral Contract for Sale, treating them as one contract, as opposed to two divisible aspects of a contract to be analyzed independently.  Thus, this Court reversed the Bankruptcy Court's ruling that the contract was subject to rejection pursuant to 11 U.S.C. § 365(a), and remanded the case so that the Bankruptcy Court could "separately analyze the legal consequences of the rejection of each aspect of the parties' agreement."  341 B.R. at 500.[1]

On remand, the Bankruptcy Court re-listed for decision Nickels' Motion to Reject.  In response, Nickels filed a motion with the Bankruptcy Court seeking a determination of "pre-petition defaults and termination of business lease and oral contract of sale by Wild Waves."  (hereafter, "Termination Motion") (App. at NA 243)  Apparently recognizing the deviation from its prior course, Nickels explained,

> [w]hile the initial impulse of Nickels is to seek to reject the Business Lease and/or Oral Contract of Sale, it would be imprudent for Nickels to do so without first having this Court determine: (i) whether there were pre-petition breaches under the Business Lease and/or Oral Contract of Sale and who caused such breaches and; (ii) whether such breaches resulted in the termination of the Business Lease and/or the Oral Contract of Sale.[2]

---

[1] Wild Waves' appeal of this Court's decision is pending before the Court of Appeals for the Third Circuit.

[2] Nickels' explanation notwithstanding, the Termination Motion is apparently an attempt by Nickels to hedge its bets with respect to this Court's first decision, currently on appeal, which created some legal uncertainty as to the outcome of this case.  Even if this Court's decision is upheld by the Third Circuit, it would not be a total victory for Nickels because even if it is allowed to reject the agreements, Wild Waves would be

3

(Id.)  According to Nickels, Wild Waves breached both the Lease and the Oral Contract for Sale, which caused the agreements to terminate pre-petition.  Nickels further reasons that because the agreements were terminated pre-petition, they are not part of its bankruptcy estate, and therefore not subject to rejection.

Ruling on the Termination Motion, the Bankruptcy Court concluded that "breaches do not constitute termination;" neither agreement was terminated pre-petition; both agreements were executory as of the petition date; and Nickels must now decide whether it is in its sound business judgment to reject the agreements under § 365.  The Bankruptcy Court also held that the proceeding was not subject to mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2) because a Motion to Reject was a core proceeding.

The parties' cross-appeals are currently before this Court.

## II.

The District Court has jurisdiction to hear appeals from final judgments, orders and decrees of the Bankruptcy Court in cases and proceedings referred pursuant to 28 U.S.C. § 157(a) to the Bankruptcy Court.  28 U.S.C. § 158(a).  The Bankruptcy Court exercised jurisdiction over this case pursuant to § 157(a) and

---

entitled to the protections of § 365(h)(1)(A)(ii), allowing Wild Waves to
remain in possession of the Pier through 2014.

thus, under § 158(a), this Court has jurisdiction over the appeals of the parties from the final order of the Bankruptcy Court.

The District Court reviews *de novo* the legal determinations of the Bankruptcy Court. *In re Fairfield Exec. Assoc.*, 161 B.R. 595, 599 (Bankr. D.N.J. 1993). The Bankruptcy Court's factual determinations will be left undisturbed on appeal unless they are clearly erroneous. Fed. R. Bankr. P. 8013.

### III.

#### A.

As stated above, Nickels asserts that the Lease and the Oral Contract for Sale were terminated pre-petition and therefore cannot be rejected.[3] The Bankruptcy Court correctly held, and the parties do not dispute, that the termination issue is governed by New Jersey law. *See In re Triangle Laboratories, Inc.*, 663 F.2d 463, 471 (3d Cir. 1981); *In re Great Feeling Spas, Inc.*, 275 B.R. 476, 478 n.3 (Bankr. D.N.J. 2002).

The Bankruptcy Court correctly and concisely stated: "breach of contract and termination are two very different concepts;" "breaches do not constitute termination." (App. at NA 651) A

---

[3] "[A] trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Nickels reasons that, because the Oral Contract for Sale and the Lease were terminated pre-petition, they essentially ceased to be a contract and lease and were nonexistent as of the petition date.

5

breach of contract gives rise to a claim for damages by the non-breaching party.  *See Smith v. Compton,* 67 N.J.L. 548, 551 (1902) ("if a party enter into an absolute contract without any qualification or exception, he must abide by the contract, and either do the act or pay the damages.").[4]  Termination, on the other hand, causes the contract to cease existing.  31 Williston on Contracts § 78:30 (4th Ed. 2006).[5]

Unlike a breach, which automatically occurs upon a party's failure to perform, termination does not automatically occur upon a party's material breach.  "A material breach of contract on the part of one party *entitles* the other party to terminate it.  If the breach is material . . . the non-breaching party *may treat the contract as terminated* and refuse to render continued performance."  *Young Travelers Day Camps, Inc. v. Felsen*, 118

---

[4]  *See also* 17A Am Jur 2d Contracts § 707 ("A cause of action for damages arises upon the breach of a contract. A breach of contract action presupposes that the contractual relationship is at an end because of a material breach by one party, and damages are sought by the plaintiff as a substitute for performance."); Restatement (Second) of Contracts § 346, cmt. a (1981); 3 E. Farnsworth, Contracts § 12.8, at 185 (1990).

[5]  Whether a contract is executory is also a distinct concept.  As this Court noted before, "'[a]n executory contract is a contract under which the obligation of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.'" *Nickels*, 341 B.R. at 493.  "A pre-petition breach of contract does not render the contract non-executory." *Id.* at 500 n.16.  Wild Waves asserts various arguments regarding the law of the case, judicial estoppel, and election of remedies.  However, all of those arguments are based on the erroneous premise that "[i]n holding that Contract is executory, the Bankruptcy Court held that neither party has materially breached or terminated the contract."  (Wild Waves' Brief at p. 17)  As a conceptual matter, a ruling that a contract is executory does not preclude a separate ruling that the contract was breached or terminated, or both.

N.J. Super. 304, 310 (Dist. Ct. 1972)(internal citations omitted; emphasis added); *see also In re Carlisle Homes,* 103 B.R. at 537 ("Under New Jersey law, a material breach of a contract on the part of one party entitles the other party to terminate the contract.") (citing *Young Travelers*); *Medivox Productions, Inc. v. Hoffmann-LaRoche, Inc.*, 107 N.J. Super. 47, 67 (Sup. Ct. 1969) (holding that upon Medivox's material breach, Hoffmann-LaRoche "was entitled to terminate the contract").  In other words, one party's material breach creates a right of termination in the other party that may or may not be exercised.

Contrary to Nickels' unsupported assertion below, a material breach cannot "automatically result in termination of a contract pre-petition."  (App. at NA 249)  Rather, termination occurs upon the non-breaching party's exercise of its right of termination, for example, by notifying the breaching party of its intent to terminate and stopping its own performance under the contract. Alternatively, the non-breaching party may elect to continue performing under the contract and merely sue for the damages caused by the breach.  As the New Jersey Supreme Court has explained:

> The fact that the defendant has been guilty of substantial breaches of essential obligations under the contract would ordinarily give the plaintiff the right to deem itself discharged from further performance and to sue the defendant for damages under the contract. But this is not always the injured party's only course of action.  In a case of 'a material breach of contract which does not,

7

>however, indicate any intention to renounce or
>repudiate the remainder of the contract * * * the
>injured party has a genuine election offered him of
>continuing performance or of ceasing to perform, and
>any action indicating an intention to perform will
>operate as a conclusive choice, not indeed depriving
>him of a right of action for the breach which has
>already taken place, but depriving him of any excuse
>for ceasing performance on his own part.'

*Frank Stamato & Co. v. Lodi*, 4 N.J. 14, 21 (1950)(quoting Williston on Contracts).

In addition to a non-breaching party's exercise of its right of termination upon a material breach of the contract, under New Jersey law, a contract can also be terminated by: (1) express agreement of the parties, such as in a termination clause included in the contract,[6] or (2) by a court judgment.[7]

The Bankruptcy Court found that no court had entered a judgment terminating either the Lease or the Contract for Sale prior to or on the petition date.[8]  Indeed, the parties have never asserted that such a judgment exists.  Accordingly, this Court will affirm the Bankruptcy Court's holding that neither agreement was terminated pursuant to a court judgment.

Likewise, the Bankruptcy Court found, and the parties do not

---

[6] *See, e.g., Young Travelers*, 118 N.J. Super. at 311 (contract provided for termination upon five days written notice).

[7] *See, e.g., In re Great Feeling Spas. Inc.*, 275 B.R. at 477 (holding that an entry of judgment for possession terminates a lease under New Jersey law).

[8] Termination is determined by looking at the status of the contract as of the petition date.  *Matter of Dunes Casino Hotel*, 63 B.R. 939, 946 (D.N.J. 1986).

dispute, that neither agreement was terminated by its terms as of the petition date.  Specifically, the court found that the Lease only provided that it would terminate on December 31, 2014, and the right of termination contained in the Oral Contract for Sale expired ten months before the petition was filed, without either party exercising its right to cancel.  These factual findings are not clearly erroneous and support the Bankruptcy Court's holding that neither agreement was terminated per its terms pre-petition.  That portion of the Bankruptcy Court's decision will also be affirmed.

Having disposed of two of the three possible methods of termination, the Bankruptcy Court then turned to the issue of termination upon material breach, again holding that neither the Contract for Sale, nor the Lease, were terminated pre-petition.  This holding will also be affirmed, because the parties do not dispute that neither party elected to terminate either agreement pre-petition.  Indeed, Nickels now seeks a retroactive adjudication that termination occurred based on alleged material breaches and Wild Waves asserts that neither agreement was ever terminated.

The Bankruptcy Court, maintaining the conceptual distinction between termination and material breach, did not decide whether either party breached the agreements or the consequences of those alleged breaches.  It explained, "[t]he issue of damages arising

9

from pre-petition breaches, post-petition breaches and rejection will be determined in the Claims Process." (App. at NA 657)

With respect to the Contract of Sale, the Bankruptcy Court's conclusion is correct. If Nickels rejects the Contract of Sale, the issues of the parties' breaches and damages will be litigated in the context of determining Wild Waves' rejection damages. *See* 11 U.S.C. § 365(g)("the rejection of an executory contract . . . of the debtor constitutes a breach of such contract."); 3-365 Collier on Bankruptcy § 365.09 (the effect of rejection is that "a breach is deemed to exist, which in the ordinary case will give rise to a claim for damages," and permits the general unsecured creditor to "seek allowance of its claim under section 502."). Alternatively, if the Contract of Sale is not rejected, Wild Waves will seek to enforce its right to purchase, thereby providing Nickels the opportunity to assert the argument it attempted to make in its Termination Motion: Wild Waves' alleged pre-petition breaches excuse Nickels' performance under the Contract of Sale. In either scenario, whether Wild Waves breached the agreement pre-petition, and the consequences of any breach, will be determined.

The same cannot be said, however, for the Lease because of the protections provided to Wild Waves under § 365(h)(1)(A). If Nickels rejects the Lease, Wild Waves may retain possession of

10

the Pier under the Lease. *See* § 365(h)(1)(A)(ii).[9] While the Bankruptcy Court would then determine the rent due Nickels, taking into consideration any offset to which Wild Waves might be entitled, *see* § 365(h)(1)(B), such a determination would not involve an adjudication of Wild Waves' alleged pre-petition breaches of the Lease. Unlike the alleged breaches of the Contract of Sale, Wild Waves' alleged breaches of the Lease could very well be left unaddressed and unresolved if not raised and adjudicated by way of a separate motion. Nickels attempted to do just this in its Termination Motion (albeit in a somewhat muddled fashion) but the Bankruptcy Court declined to rule on the alleged breaches.

Thus, this Court concludes that the Bankruptcy Court should have reached the issue of whether either party breached the Lease, and the consequences of any breach, because the issue is not likely to be raised and litigated in the claims process. To the extent that the Bankruptcy Court's decision failed to address the issue, the Bankruptcy Court's order will be vacated and remanded for development of a factual record and adjudication of the alleged breaches of the Lease.

Upon remand, the Bankruptcy Court should first decide

---

[9] Alternatively, Wild Waves could, in theory, treat the Lease as terminated, *see* § 365(h)(1)(A)(i), however given its arguments that the Lease was not terminated, such a course of action seems unlikely, and in any event, would presumably end the dispute between the parties as termination of the lease is precisely what Nickels seeks.

11

whether the Lease has been breached before deciding the Motion to Reject, which has never been decided and is, presumably still pending.  Nickels first raised the issue of breach before Judge Seltzer prior to filing bankruptcy, but the issue was not decided when Nickels filed and the automatic stay took effect.  While the stay was lifted in part to determine whether or not contracts existed, it was not lifted as to whether breaches had occurred.  As Nickels noted at oral argument, it has attempted all along to obtain an adjudication of the merits of this dispute.

Moreover, a determination of the parties' relative obligations under the Lease, if any, will inform Nickels' determination whether, in its business judgment, rejection of the Lease is appropriate.  Accordingly, the Bankruptcy Court should address fact discovery and adjudication of the alleged Lease breaches before reaching the Motion to Reject.

B.

In its cross-appeal, Wild Waves asserts that the Bankruptcy Court erred by deciding the Termination Motion because the Court was required to abstain pursuant to 28 U.S.C. § 1334(c)(2).  The statute states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under

12

>    title 11, with respect to which an action could
>    not have been commenced in a court of the United
>    States absent jurisdiction under this section, the
>    district court shall abstain from hearing such
>    proceeding if an action is commenced, and can be
>    timely adjudicated, in a State forum of
>    appropriate jurisdiction.

Id. The Bankruptcy Court concluded that "the determination of a state-law issue raised as part of a motion to reject under § 365 is not subject to mandatory abstention" because it was not a proceeding "related to title 11" (i.e., the motion was a core proceeding) (App. at NA 656).

The Bankruptcy Court must abstain if the following five factors are met:

>    (1) the proceeding is based on a state law claim or
>    cause of action;
>
>    (2) the claim or cause of action is 'related to' a
>    case under title 11, but does not 'arise under'
>    title 11 and does not 'arise in' a case under title
>    11;[10]
>
>    (3) federal courts would not have jurisdiction over
>    the claim but for its relation to a bankruptcy case;
>
>    (4) an action 'is commenced' in a state forum of
>    appropriate jurisdiction; and
>
>    (5) the action can be 'timely adjudicated' in a
>    state forum of appropriate jurisdiction.

*Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006). Also, the motion to abstain must be timely. 28 U.S.C. § 1334(c)(2); *Stoe*,

---

[10] This factor is "equivalent to the question whether [the claim] is a 'core' proceeding or a 'non-core' proceeding within the meaning of 28 U.S.C. § 157." *Stoe v. Flaherty*, 436 F.3d 209, 217 (3d Cir. 2006).

436 F.3d at 213.

On appeal, Wild Waves asserts that the Bankruptcy Court erred by failing to separately consider the termination issue on one hand, and the Motion to Reject, on the other.  Wild Waves does not dispute that the Motion to Reject is a core proceeding (i.e., either arising under title 11 or arising in a title 11 case),[11] but it asserts that termination of the agreements is a non-core issue (i.e., only related to a case under title 11) and that the other statutory factors are met.  Thus, two questions are presented: First, which analytical framework is correct?  In deciding whether to abstain pursuant to § 1334(c)(2), should the court consider termination and alleged breaches as part of the Motion to Reject, or separately?  Second, if separate consideration is appropriate, is the Termination Motion subject to mandatory abstention?

---

[11] There appears to be some split in authority about whether a motion to reject "arises under" title 11 or "arises in" a title 11 case.  However, resolving the conflict is not necessary to the disposition of the present appeal, as all authorities agree that such a motion is a core proceeding.  *See Meredith v. Clayton Homes, Inc.*, 2007 U.S. Dist. LEXIS 28370 at *13 (W.D. Ark. April 17, 2007) ("Causes of action 'arising under' Title 11 include claims for allowance, claims regarding the obtaining of credit, plan confirmation orders and orders regarding the assumption or rejection of contracts."); *Cf. C & B, LLC v. Grubbs Emergency Servs. (In re Grubbs Constr. Co.)*, 305 B.R. 476, 480 (Bankr. W.D. Ark. 2003)("Examples of 'arising in' would be allowance or disallowance of a claim, orders in respect to obtaining credit, confirmation of plans, and orders permitting the assumption or rejection of contracts."); *Harley Hotels, Inc. v. Rain's Int'l Ltd.*, 57 B.R. 773 (M.D. Pa. 1985)(refusing to abstain from deciding, in the context of a motion to assume an executory lease, the validity of the lease under state law, holding that the proceeding arises in a title 11 case).

(1)

The Court concludes that when deciding whether mandatory abstention applies, the Motion to Reject and the Termination Motion should be considered separately.

In *Orion Pictures Corporation v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, the Second Circuit held that "it was error for the bankruptcy court to decide a disputed factual issue between the parties to a contract in the context of determining whether the debtor or trustee should be permitted to assume the contract [pursuant to 11 U.S.C. § 365]."  4 F.3d 1095, 1098 (2d Cir. 1993).  In that case, simultaneously pending were a motion to assume an executory contract and an adversarial proceeding asserting that the same contract had been breached pre-petition. The bankruptcy court concluded that the adversary proceeding and the motion to assume required the court to address identical issues of fact and law, and therefore decided the motion to assume, including determining that the contract had not been breached, and dismissed the adversary proceeding as moot.  *Id.* at 1098.

The Second Circuit vacated the grant of the motion to assume and remanded to the bankruptcy court, explaining that ruling on a motion to assume and determining whether a pre-petition breach of contract occurred involved fundamentally different functions:

> At heart, a motion to assume should be considered a
> summary proceeding, intended to efficiently review

15

> the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate. It is not the time or place for prolonged discovery or a lengthy trial with disputed issues. . . . In reviewing a trustee's or debtor-in-possession's [exercise of business judgment] to assume or reject a contract . . . a bankruptcy court sits as an overseer of the wisdom with which the bankruptcy estate's property is being managed . . . and not, as it does in other circumstances, as the arbiter of disputes between creditors and the estate. . . . Permitting a bankruptcy court to rule conclusively on a decisive issue of breach of contract would render the use of 'business judgment' . . . unnecessary, and is incompatible with the limited purpose of motions to assume of ensuring that valuable property is preserved and burdensome property discarded.

*In re Orion Pictures*, 4 F.3d at 1099. The court further explained, "[w]e note there is no prohibition on bankruptcy courts, for reasons of efficiency, hearing motions to assume and trying related adversary proceedings simultaneously. *They merely must be treated as conceptually separate proceedings*." *Id.* at 1099 (emphasis added). Based on these fundamental differences between a motion to reject and adjudicating whether a pre-petition breach has occurred, this Court concludes that the Motion to Reject and the Termination Motion must be given separate consideration in the abstention analysis.

The procedural history of this case further demonstrates that while the Motion to Reject and the Termination Motion are related, they are analytically, and in this case temporally, separate. When Nickels first moved to reject the Oral Contract

16

for Sale and the Lease, it did not assert that the agreements were breached or terminated pre-petition.  Instead, it argued that the agreements were executory, rejection was in its best business judgment, and that Wild Waves was not entitled to the protections of 11 U.S.C. § 356(i), as it only possessed 70% of the pier and therefore was not a purchaser in possession.  (App. at NA 125)

After this Court reversed and remanded the Bankruptcy Court's ruling on the Motion to Reject, Nickels filed another motion-- the Termination Motion-- which was not styled as a motion to reject, and indeed, acknowledged that the relief sought differed from the relief it sought previously.  Moreover, the Bankruptcy Court ruled on the Termination Motion but did not go on to decide the Motion to Reject.[12]  When Wild Waves moved the Bankruptcy Court to abstain pursuant to 28 U.S.C. § 1334(c)(2), the only motion presently before the court was the Termination Motion, not the Motion to Reject.

This Court finds persuasive *Orion Pictures'* distinction between adjudicating a motion pursuant to § 365, and adjudicating a factual dispute over pre-petition breaches and termination of a contract.  The procedural posture of the case also demonstrates the need to consider the Motion to Reject and the Termination

---

[12] See App. at NA 657, "As this Court has now found that the agreements were not terminated pre-petition, and separately, that the agreements were executory as of the petition date, Debtor must now decide whether it is in its sound business judgment to reject those two agreements under § 365."

Motion separately when deciding whether mandatory abstention pursuant to § 1334(c)(2) applies.  Accordingly, this Court holds that in the context of its abstention analysis, the Bankruptcy Court erred by considering the Termination Motion as part of the Motion to Reject.[13]  However, the error was harmless, because as explained below, this Court concludes that mandatory abstention does not apply to the Termination Motion.

(2)

The Bankruptcy Court was not required to abstain from exercising its jurisdiction over the Termination Motion,[14] because this Court is not persuaded that the termination and breach of contract claims can be timely adjudicated in a state forum of appropriate jurisdiction.  "Timeliness . . . must be determined with respect to needs of the title 11 case and not solely by reference to the relative alacrity with which the state and federal court can be expected to proceed."  *Stoe,* 436 F.3d at 219.  As the Third Circuit explained, a party "should be able to insist upon a state adjudication *if* that will not adversely

---

[13] This Court is aware that another district court within this Circuit has previously taken the opposite analytical approach, holding that a "substantial nexus" exists between a motion to assume an executory contract and the determination of pre-petition defaults under the same contract, making the entire proceeding "core" and therefore not subject to mandatory abstention.  *See Harley Hotels, Inc. v. Rain's Int'l Ltd.*, 57 B.R. 773 (M.D. Pa. 1985).  *Harley Hotels* was decided well before *Orion Pictures*, and is not binding on this Court in any event.

[14] As explained *supra*, the Motion to Reject is core and therefore cannot be subject to mandatory abstention.

affect the bankruptcy proceedings." *Id.* at 214 (emphasis added).

Because the Termination Motion is so integrally related to the Motion to Reject and the bankruptcy case as a whole, a state court adjudication would adversely affect the bankruptcy proceedings by disrupting the course of proceedings which have been ongoing in the bankruptcy case for three and a half years.[15] There is no dispute the disposition of the Termination Motion on the merits could have a very large impact on the administration of the bankrupt estate. Even if a state court could, with "relative alacrity," adjudicate the termination and breach of contract claims, the needs of this title 11 case compel the conclusion that resolution in state court would not be sufficiently timely.

Accordingly, mandatory abstention pursuant to § 1334(c)(2) is not required in this case, and the Bankruptcy Court's decision declining to abstain will be affirmed.

**IV.**

For the reasons set forth above, the Bankruptcy Court's Order of September 28, 2006, will be affirmed, except to the extent that the Court declined to decide the alleged breaches of the Lease. With respect to asserted Lease breaches committed by either party, the order will be vacated and remanded for further

---

[15] The Motion to Reject was first filed on December 16, 2003.

proceedings consistent with this Opinion. The Court will enter an appropriate order.

Dated: August 2, 2006

                                     <u>s/ Joseph E. Irenas</u>
                                      JOSEPH E. IRENAS, S.U.S.D.J.